United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF EMERYVILLE and the EMERYVILLE REDEVELOPMENT AGENCY,<br><br>Plaintiffs,<br><br>v.<br><br>ELEMENTIS PIGMENTS, INC., a Delaware corporation; THE SHERWIN-WILLIAMS COMPANY, an Ohio corporation; PFIZER, INC., a Delaware corporation; A&J TRUCKING COMPANY, INC., a dissolved California corporation; BAKER HUGHES, INC., a Delaware corporation; ARTHUR M. SEPULVEDA and JOSEPHINE SEPULVEDA, individually and as TRUSTEES OF THE SEPULVEDA FAMILY LIVING TRUST; and THE SEPULVEDA FAMILY LIVING TRUST,<br><br>Defendants. | No. C 99-03719 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

**INTRODUCTION**

In this environmental contamination dispute, defendant The Sherwin-Williams Company moves to enforce a settlement agreement between itself and plaintiffs the City of Emeryville and the Emeryville Redevelopment Agency (collectively "Emeryville"). Sherwin-Williams also seeks dismissal with prejudice of claims filed against it by the Emeryville Redevelopment Agency in state court, and of cross-claims for contribution and/or indemnity filed by other defendants in that state-court action. Two defendants in the state-court action have intervened in

the instant action for the limited purpose of opposing the motion, insofar as it seeks to extinguish their contribution and/or indemnity claims in the state-court action. The remaining defendants are not implicated in this motion. For the reasons stated below the motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This action concerns contamination and remediation of two adjacent sites in Emeryville, California. Site A consists of the properties commonly known as the former Sepulveda Property (5600 Shellmound Street), the former McKinley Property (5500 Shellmound Street), the former Elementis Property (4650 Shellmound Street), the Old Shellmound Street Right of Way, and additional properties south of 4650 Shellmound Street. Site B borders Site A on the north, and consists of the C&S Enterprise Property (1535 Powell Street), the Koeckritz Property (5770 Shellmound Street), the Robinson Property (5760 Shellmound Street), and the Adam Property (1525 Powell Street and the Rail Spur Property).

From the 1920s through the 1960s, Sherwin-Williams owned and occupied the northern third of Site A. It used the property for formulation, packaging, and distribution of inorganic and organo-chlorine pesticides and insecticides. In the late 1990s, significant soil and groundwater contamination was found on the former Sherwin-Williams property.

In August 1999, Emeryville filed suit against Sherwin-Williams and other defendants, alleging they were responsible for contaminants "in the soil and groundwater at and beneath the Property [Site A] and migrating from the Property [Site A]" (Wick. Decl. Exh. A ¶ 90). Emeryville sought cost recovery, contribution, and damages from the defendants under federal law, state law, and common law theories of liability.

In November 2000, a settlement agreement was reached. The settlement was approved by order in February 2001. Pursuant to the settlement, Sherwin-Williams paid Emeryville a lump-sum of $6.5 million. Sherwin-Williams also agreed to share future costs "in connection with ongoing groundwater Response actions arising from groundwater at, on, under, or emanating from" Site A (Wick. Decl. Exh. B at 5). Specifically, Emeryville agreed to pay the first $200,000, Emeryville and Sherwin-Williams agreed to bear equally the next $1,314,000,

and the parties agreed to bear subsequent costs "95% by Sherwin-Williams and 5% by Emeryville" (*ibid.*). Emeryville paid the first $200,000 and incurred additional expenses of $175,731 of which Sherwin-Williams bore $87,857.

In return for remediation cost sharing, the parties released one another "from any and all claims, demands, actions, and causes of action arising from or related to the Site [Site A], including without limitation, claims arising from the release(s) of hazardous substances and/or contaminants at, on, under or emanating from the Site [Site A], whether presently known or unknown, suspected or unsuspected" (*id.* at 6–7). The parties also agreed that the settling defendants, including Sherwin-Williams, were entitled to protection from contribution and/or indemnity claims pursuant to federal and state law. This Court retained jurisdiction to construe, implement, and enforce the settlement. The prevailing party in any such dispute would "be entitled to recover reasonable attorneys' fees, disbursements and court costs" (*id.* at 3).

In 2005, Emeryville began investigating contamination at Site B. A November 2005 report concluded that "[p]otential offsite sources of chemicals of concern" included the adjacent properties "formerly occupied by a Sherwin-Williams arsenic-based pesticide manufacturing facility" and that elevated arsenic at Site B's southern border was "most likely due to residually contaminated soil from former Sherwin Williams [sic] pesticide manufacturing site" (Wick. Decl. Exh. N at 1–2, 12). In May 2006, the Emeryville Redevelopment Agency commenced an action in state court alleging that certain parties were liable for "hazardous substances discharged, deposited, disposed of, or released onto or at the Subject Property [Site B] and/or emanating to and from the Subject Property [Site B]" (Wick. Decl. Exh. C ¶ 13). Sherwin-Williams was among the named defendants in the Site B action. The other defendants, each denying liability, have filed cross-claims against each other seeking contribution and/or indemnity.

Now, Sherwin-Williams moves to enforce the settlement, including the contribution bar, and obtain dismissal with prejudice of the claims filed against it in the Site B action. In particular, it seeks an order (i) confirming that the settlement released the claims asserted against it in the Site B action and provided contribution protection, (ii) compelling the dismissal

3

1  of the complaint and cross-complaints against Sherwin-Williams in the Site B action, and
2  (iii) awarding Sherwin-Williams its attorney's fees and costs incurred in filing this motion and
3  in defending the Site B action. Emeryville opposes the motion and seeks to recover its fees and
4  costs incurred in so doing.

   Two defendant property owners in the Site B action sent letters to the Court indicating a desire to intervene in the instant action. One letter was from Howard F. Robinson, Jr. and the other was from Christopher D. Adam and Hilary A. Jackson, individually and as successors to Mary Lou Adam as Trustee of (i) Trust A u/t/o the Adam Family Trust dated October 10, 1977, and restated on October 14, 2003, and (ii) the Adam Family Trust, Survivor's Share (the "Adams"). The Court granted twenty calendar days for any party to file a motion to intervene and a response to Sherwin-Williams' motion to enforce the settlement. Mr. Robinson and the Adams filed motions on October 9. Both were granted intervention. A hearing was held on October 16, at which all parties were heard.

**ANALYSIS**

"'The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.' This is true even though the underlying cause of action is federal." *United Commercial Ins. Service, Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (internal citations omitted). Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time of contracting; where a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, so long as its language is clear and explicit and does not involve an absurdity. Cal. Civ. Code §§ 1636, 1638, 1639.

**1.   RELEASE PROVISION.**

In relevant part, the release provision contained in Section VII of the settlement provided (Wick. Decl. Exh. B at 6–7):

> [T]he Parties further agree to release one another from any and all claims, demands, actions, and causes of action arising from or related to the Site, including without limitation, claims arising from the release(s) of hazardous substances and/or contaminants at, on, under or emanating from the Site, whether presently known or unknown, suspected or unsuspected. In giving this release, each

4

> Party expressly waives any protection afforded by Section 1542 of the California Civil Code, which provides as follows:
>
> > A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

While never characterizing the settlement language as ambiguous or absurd, Emeryville maintains that Sherwin-Williams is seeking an erroneous construction which (i) misreads the express terms of the settlement, (ii) ignores the parties' intentions in agreeing to the settlement, and (iii) flouts the legal basis for this Court's approval of the settlement.

### A.     Express Terms.

Emeryville asserts that Sherwin-Williams misreads the terms of the release provision as extending to any and all claims concerning contamination caused by Sherwin-Williams' historic pesticide-handling operations, wherever in Emeryville such contamination may be found. Emeryville maintains that the release should instead be read as embracing only "a specific, geographically defined plot of land," Site A, not "any and all contamination from historic business operations conducted on a portion of that land" (Opp. 9). Emeryville points to consistent references in the agreement to "the Site," meaning Site A, with no mention of Site B or any properties thereon. Emeryville also states that the "emanating from" phrase is "stated in the present tense only" and thus does not refer to "contamination emanating from the Site *and any contamination that ever emanated from the Site at any time prior to the date of this Agreement* [sic]" (*id.* at 16). Emeryville contends Sherwin-Williams is seeking an overbroad "release through a linguistic slight of hand, *i.e.*, saying 'the Site' really meant 'any and all contamination associated with our business operations at the Site'" (*id.* at 9). Emeryville asserts this would grant Sherwin-Williams consideration it did not previously bargain for or obtain, amounting to a "a pure windfall" in contravention of the "polluter pays" mandate of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") (*ibid.*).

Emeryville is correct that the settlement repeatedly references "the Site," meaning Site A. Sherwin-Williams is correct, however, that the release provision expressly and broadly encompasses "any and all claims . . . arising from or related to the Site, including without

5

limitation [those related to contaminants] . . . at, on, under or *emanating from the Site, whether presently known or unknown, suspected or unsuspected*" (Wick. Decl. Exh. B at 6–7). As to the phrase "emanating from," there is nothing to suggest it should be narrowed to a specific window of time. Pursuant to the express terms of the settlement, Emeryville agreed to release Sherwin-Williams from claims including those it has raised in the Site B action, insofar as those claims arise from or relate to contaminants that emanated from Site A.

### B. Parties' Intent.

Because the settlement "language is clear and explicit, and does not involve an absurdity" the Court need not look beyond the writing to ascertain the intention of the parties. Cal. Civ. Code § 1638. Nevertheless, this order will briefly examine the intent argument raised by Emeryville.

Emeryville maintains the parties' intent in agreeing to the settlement was to resolve litigation over costs incurred, and to be incurred, in cleaning up Site A. In particular, it contends the costs contemplated were those related to implementing the cleanup plan approved by state regulators for Site A and a plume of arsenic-impacted groundwater moving westward off Site A. The release was intended, according to Emeryville, to correspond with these cost-sharing obligations, not to exceed them to encompass contamination of Site B or elsewhere.

Though Emeryville never asserts the settlement language is ambiguous, and notwithstanding a provision expressly stating "[t]his Settlement Agreement contains the entire agreement" and "supersedes any and all prior agreements, understandings, promises, and representations" (Wick. Decl. Exh. B. at 11), Emeryville nevertheless asks the Court to consider the "extensive, contemporaneously prepared, and jointly sanctioned federal court pleading that explains the written agreement" to determine intent (Opp 8). Yet, even taking these records into account, the broad release agreed to by Emeryville remains unchanged. Moreover, under California law, the relevant intent for purposes of contract interpretation is objective, and the subjective intent of a party is "irrelevant if unexpressed." *United Commercial Ins.*, 962 F.2d at 856.

6

### C. Legal Basis.

Emeryville maintains that the interpretation proffered by Sherwin-Williams is contrary to the requirement that CERCLA settlements be substantively fair, procedurally fair, reasonable, and consistent with statutory objectives. These factors, however, go to the standard of review governing a court's approval of a CERCLA settlement, not to the subsequent construction and enforcement of particular clauses. When such settlements "are forged, the trial court's review function is only to 'satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve.'" *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 85 (1st Cir. 1990) (quoting the legislative history to the 1986 CERCLA amendments); *accord United States v. Montrose Chem. Corp.*, 50 F.3d 741, 746 (9th Cir. 1995). Nonetheless, this order will briefly consider Emeryville's arguments regarding each factor.

#### *(1) Substantive Fairness.*

Emeryville states that substantive fairness requires apportionment of liability that reasonably approximates how much harm each responsible party created. Emeryville contends that had the parties intended the release provision to embrace Site B contamination, they would have needed to provide at least estimated costs for Site B. Emeryville asserts that not only was no such estimate ever calculated, but no effort was made by Sherwin-Williams to suggest any intention to encompass Site B contamination or any other non-Site B cleanup costs. Emeryville maintains that were we to accept the interpretation sought by Sherwin-Williams, it would be put in "the same dubious position that resulted in the Central District being reversed in *United States v. Montrose* [*Chem. Corp.*, 50 F.3d 741 (9th Cir. 1995)]."

In *Montrose*, the Ninth Circuit held that the district court could not properly approve a CERCLA settlement where it failed to consider any estimate of the projected total natural-resource damages at issue in the case. *Id.* at 743. The instant case is distinguishable in two decisive respects. *First*, whereas *Montrose* involved an appeal challenging a district court's approval of a CERCLA settlement, the instant action involves a motion to enforce and construe provisions of a settlement agreed to nearly a decade ago. *Second*, even were this an action

7

challenging the settlement's approval, the deficiency cited by the Ninth Circuit in *Montrose* did not similarly afflict approval of the instant settlement.

Specifically, the Ninth Circuit faulted the district court in *Montrose* for relying on a Special Master's report and hearing testimony which were both devoid of "any reference to the governments' estimates — preliminary or otherwise — of the potential total natural resource damages." The district court had thus found the settlement to be substantively fair "without having some benchmark with which to compare it." *Id.* at 746. The Ninth Circuit called it a situation where there was no evidence at all "from which the district court could have made any determination with respect to estimates of responsibility and damage." *Id.* at 746–47. In remanding the matter, the Ninth Circuit directed the district court to determine the proportional relationship between the settlement amount and a "current estimate of total potential damages." *Id.* at 747.

Unlike *Montrose*, this Court did rely on a then-current estimate of total natural-resource damages in reviewing the proposed settlement amount. Unlike *Montrose*, the Court thus did have a benchmark against which to compare the settlement amount. Unlike *Montrose*, this is not a case where the Court lacked evidence to support its review and approval of the settlement amount.

### *(2)   Procedural Fairness.*

Emeryville states procedural fairness "was established by virtue of the fact that every party with a stake in the outcome participated in a two-day mediation supervised by a former Northern District Court Judge" (Opp. 12). Emeryville asserts that apart from Emeryville and Sherwin-Williams, none of other parties to the Site B action were involved in the settlement mediation or received notice thereof but they would now be cut off from asserting any rights they may have against Sherwin-Williams for cleanup costs never previously negotiated. This assertion is inapposite for two reasons. *First*, none of the other parties to the Site B action need have been involved in the mediation regarding Site A, as the contamination of Site A was not attributable to them. Moreover, even were contamination of Site A attributable to such parties, they would not thereby have been entitled to participate in the mediation.

8

"The CERCLA statutes do not require the agency to open all settlement offers to all PRPs [potentially responsible parties]; and we refuse to insert such a requirement into the law by judicial fiat." *Cannons Engineering Corp.*, 899 F.2d at 93. *Second*, as discussed below, the settlement does *not* protect Sherwin-Williams against claims for contribution and/or indemnity brought by Site B property owners who received no notice of the settlement and were afforded no opportunity to object.

### *(3)    Reasonableness and Statutory Objectives.*

Regarding reasonableness, Emeryville states that the relevant criteria are protecting the public from bearing the cost of cleanup and the relative strength of the parties' litigation positions. Emeryville maintains that Sherwin-Williams' current construction fails to protect the public from Site B cleanup costs and that nothing in the settlement record evidenced weakness in Emeryville's litigation position. Regarding statutory objectives, Emeryville states that CERCLA's purpose is accountability and an unsullied environment. Emeryville maintains that the instant motion fails to "serve the objective of environmental accountability; nor does it help to restore the environment" (Opp. 13).

As stated earlier, these factors go to approval of a CERLA settlement, not to subsequent construction and enforcement of particular clauses. Moreover, Emeryville's arguments do little to change the fact that it agreed to the settlement, cost sharing and release provisions alike. A judge is not at liberty to rewrite the express language of the settlement agreed to by the parties nearly a decade ago.

In sum, the release protects Sherwin-Williams from direct liability to Emeryville for the claims raised against it in the Site B action, insofar as those claims are based on contamination that emanated from Site A.

### 2.    CONTRIBUTION BAR.

The second half of the problem is whether Sherwin-Williams remains liable for contribution to those found liable in the Site B action. In relevant part, the contribution

9

provision contained in Section VIII of the settlement agreement provided (Wick. Decl. Exh. B at 8):

> All matters that are the subject of the releases in Section VII and all matters alleged in the Complaint filed in the Action are defined to be "covered matters" within the meaning of CERCLA. With regard to any claims for costs, damages, or other relief asserted against the Settling Defendants by persons not party to this Agreement on account of the release(s) of hazardous substances at the Site, the Parties agree that Settling Defendants are, and each of them is, entitled to such protection as is provided in Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), California Code of Civil Procedure Sections 877 and 877.6, and any other applicable provision of federal or state law, as well as an order dismissing the cross-claims asserted in the Action and barring contribution or equitable indemnity claims.

Sherwin-Williams contends this provision should be interpreted to erect a contribution bar against all cross-claims asserted against it in the Site B action. Emeryville, Mr. Robinson, and the Adams all respond that neither CERCLA nor California Code of Civil Procedure Sections 877 and 877.6 erect a contribution bar in this case. *First*, they assert CERCLA's contribution bar is available only to parties who have settled with the "United States" or "a State" and that Emeryville qualifies as neither. *Second*, they say that both the federal and state contribution bars protect only against claims by non-parties who received notice of the settlement and had an opportunity to object before the settlement became effective. It is undisputed that neither Sherwin-Williams nor any other party to the Site A action provided notice to Mr. Robinson, the Adams, or any other Site B property owner or other Site A neighbor.

### A.   CERCLA.

CERCLA's contribution bar, contained in Section 113(f)(2) provides:

> A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any other potentially liable persons unless its terms so state, but it reduces the potential liability of the others by the amount of the settlement.

Section 113(f)(2) expressly applies to persons who have resolved their "liability to the United States or a State." CERCLA's statutory definitions are found in Section 101. Section 101(27) defines "[t]he terms 'United States' and 'State' to include the several States

10

1 of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the United States Virgin Islands, the Commonwealth of the Northern Marianas, and any other territory or possession over which the United States has jurisdiction." On an earlier motion in this case, this Court expressly relied upon Section 101(27) in finding that "CERCLA's definition of 'state' does not include municipalities." *City of Emeryville v. Elementis Pigments, Inc.*, 2001 WL 964230, at *10 (N.D. Cal. 2001). This reading is buttressed by the fact that Section 101(21) defines the term "person" to mean "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, *municipality*, commission, political subdivision of a State, or any interstate body" (emphasis added). Presumably, had Congress intended the term "state" to include municipalities, it would have defined the term accordingly, as it did with respect to "person."

Sherwin-Williams notes that this Court's earlier construction of the term "state" was made in the context of CERCLA Section 107(a)(4)(A) — which permits the United States and "States" to recover costs of removal or remedial action not inconsistent with the national contingency plan — not in the context of Section 113(f). Sherwin-Williams maintains that Emeryville may somehow be considered a "state" for purposes of Section 113(f) but not a state for purposes of Section 107(a)(4)(A). In support of this proposition, Sherwin-Williams cites a Southern District of New York decision which states, by way of footnote:

> Two other cases hold that a municipality, or a private party, is a "state" for purposes of contribution protection under § 113(f)(2), but do not hold that a municipality is a "state" for purposes of proceeding under § 107(a)(4)(A). Although these cases support the Town's position to the extent that a "state" under § 113(f)(2) should be the same thing as a "state" under § 107(a)(4)(A), policy considerations, such as facilitating settlement, may justify treating a municipality, or even a private party, as a "state" for purposes of § 113(f)(2), but not § 107(a)(4)(A).

*Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 682, fn. 22 (S.D.N.Y. 1996) (internal citations omitted).

Emeryville, Mr. Robinson, and the Adams counter with rulings that found municipalities did not qualify as "state[s]" for purposes of Section 113(f). None of the parties have presented any Supreme Court or Ninth Circuit authority that resolves this question.

11

At all events, this Court is convinced that the definition of state must be the same for all purposes under CERCLA and this order will stand by the earlier ruling herein, namely that CERCLA's definition of "state" does *not* include municipalities. This is dispositive as to the availability of the CERCLA contribution bar in this case, but the notice issue, next considered, is equally fatal to Sherwin-Williams' argument.

\*           \*           \*

As to notice, CERCLA Section 122 governs settlements. Subsection (i) thereof details settlement procedures. Paragraph (1) provides that notice of "any settlement . . . shall [be] publish[ed] in the Federal Register" along with information identifying "the facility concerned and the parties to the proposed settlement." Paragraphs (2) and (3) prescribe, respectively, a thirty-day comment period "beginning on the date of publication of notice under paragraph (1)" and "consider[ation of] any comments filed under paragraph (2)."

Conformance with the Section 122(i) notice requirement was central to one of the two decisions relied upon by Sherwin-Williams in support of its proposition that CERCLA's contribution bar does not require notice to non-parties. Sherwin-Williams is correct that *United States v. Serafini*, 781 F. Supp. 336 (M.D. Penn. 1992), upheld a Section 113(f) contribution bar against claims for contribution by non-parties. Sherwin-Williams fails to mention, however, that the court, in so holding, expressly emphasized the fact that the non-parties had received constructive notice of the settlement. The court stated, "[i]ndeed, prior to the settling defendants entering into the consent decree, information related to the Taylor Borough site and this litigation appeared in the Federal Register on no fewer than five separate occasions." *Serafini*, 781 F. Supp. at 339. Sherwin-Williams is likewise correct that *Cannons Engineering Corp.*, *supra*, upheld a Section 113(f) contribution bar against claims for contribution by non-parties. There too, however, the non-parties received advance notice. They were both informed of the proposed settlement and invited to participate. *Cannons Engineering Corp.*, 899 F.2d at 86.

In sum, Emeryville does not qualify as a state for purposes of Section 113(f) and no notice was provided to non-parties of the instant settlement agreement. For both reasons,

12

CERCLA's contribution bar does not protect Sherwin-Williams against claims by those non-parties for contribution and/or indemnity.

### B. California Good Faith Settlement Statutes.

The California Good Faith Settlement statutes provide that when a settlement is determined by a court to have been made in good faith, the settlement "bar[s] any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. § 877.6(c). The party applying for determination of a good faith settlement is required to give notice of its application to all other parties and to the court. Cal. Civ. Proc. § 877.6(a). Once a determination of good faith or lack thereof is made, a party aggrieved may petition the appellate court to overturn the settlement determination. Cal. Civ. Proc. § 877.6(e).

The California Court of Appeal for the Fourth District found in 2006 that "[a] settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard." *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (2006). The *Frawley* court cited the following authorities in support of its finding:

> *Britz*, [*Inc. v. Dow Chemical Co.* (1999),] *supra*, 73 Cal. App. 4th at pp. 181, 184, 86 Cal. Rptr. 2d 188 (Britz); *Wilshire Ins. Co. v. Tuff Boy Holding, Inc.*, *supra*, 86 Cal. App. 4th at pp. 638–644, 103 Cal. Rptr. 2d 480; see *Mid-Century Ins. Exchange v. Daimler-Chrysler Corp.* (2001) 93 Cal. App. 4th 310, 314–315, 112 Cal. Rptr. 2d 880; see *Singer Co. v. Superior Court* (1986) 179 Cal. App. 3d 875, 895, 225 Cal. Rptr. 159 ["Having concluded that fundamental constitutional principles of due process require that a likely defendant, who was a stranger to the litigation at the time a determination of good faith was rendered, be afforded a new hearing on this issue . . . [and have] a concurrent right in such a later-named defendant to engage in discovery . . . to elicit evidence relevant to the *Tech-Bilt* factors"]; Weil and Brown, *California Practice Guide: Civil Procedure Before Trial* (The Rutter Group 2005) § 12:860, p. 12(11)-63 ["In addition, due process requires notice to other joint tortfeasors who are not presently parties to the action but whose rights may be affected by a 'good faith' determination (because § 877.6(c) bars indemnity claims of party and nonparty joint tortfeasors")], 12:926, p. 12(11)-76 ["a settling tortfeasors' § 877.6(c) good faith settlement determination

13

>  discharges indemnity claims by other tortfeasors, whether or not named as parties to the action, provided they were given notice and an opportunity to be heard . . . ."). So long as there is notice, a joint tortfeasor's indemnity claim against the settling tortfeasor will be barred by a good faith settlement "regardless of whether [the nonsettling joint tortfeasor] appeared and contested the determinations." (*Britz*, *supra*, 73 Cal. App. 4th at p. 185, 86 Cal. Rptr. 2d 188.)

Although Sherwin-Williams maintains notice to non-parties was not required to effectuate CERCLA's contribution bar, it seems to acquiesce to the view that notice was required under the California procedure, inasmuch as it raises no objection to this point of California law. This order, therefore, holds that California law is against Sherwin-Williams.

*        *        *

To be sure, this outcome lacks symmetry, meaning that Sherwin-Williams is entitled to the benefit of the release as against Emeryville but it is not entitled to a contribution bar as against others who have now sued, at least in part, for the same tort. This outcome is, in part, due to Sherwin-Williams' own failure to give notice to the parties it now seeks to disadvantage before the settlement was approved. There being enough blame to go around, all motions for sanctions and attorney's fees are denied.

## CONCLUSION

For the foregoing reasons, Sherwin-Williams' motion is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent it seeks confirmation that the settlement released the claims now asserted against it by the Emeryville Redevelopment Agency in the Site B action and dismissal with prejudice of those claims, insofar as those claims arise from or relate to contaminants that emanated from Site A. The motion is **DENIED** to the extent it seeks dismissal

14

of cross-claims for contribution and/or indemnity filed by defendants in the Site B action. The requests by Sherwin-Williams and Emeryville to recover attorney's fees and costs are **DENIED**.

**IT IS SO ORDERED.**

Dated: October 29, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE